IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| DAVID L. SHAW, #689847 | § | |
| VS. | § | CIVIL ACTION NO. 6:07cv443 |
| KAREN NORMAN, ET AL. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff David L. Shaw, a prisoner previously confined at the Beto Unit of the Texas prison system, filed the above-styled and numbered civil rights lawsuit. The Defendants remaining in the lawsuit are former Beto Unit Officer Karen Norman and Property Officer Sherri L. Milligan. The complaint was referred to the undersigned by consent of the parties pursuant to 28 U.S.C. § 636(c).

## History of the Case

The original complaint was filed on September 17, 2007. The Plaintiff complained about the confiscation and destruction of his religious property, including his Koran, prayer rug and prayer beads. He also complained about Chaplain Kiser removing him from the Ramadan list. On April 4, 2008, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. On April 28, 2008, the Court issued a Memorandum Opinion permitting the Plaintiff to proceed with his claims concerning the denial of religious rights, as protected by the First Amendment and Religious Land Use and Institutionalized Persons Act ("RLUIPA"). He was permitted to proceed with such claims against Karen Norman, Sherri L. Milligan and Chaplain Kiser. All remaining claims were dismissed. On October 1, 2008, the Court granted Chaplain Kiser's motion for summary judgment and denied the motion for summary judgment filed by Defendants Norman and Milligan. On December 19, 2008, the Court denied the amended motion for summary judgment filed by Defendants Norman and Milligan.

1

A trial was conducted on the Plaintiff's First Amendment and RLUIPA claims on June 15 and 16, 2009. A jury found that the Defendants had not violated the Plaintiff's First Amendment rights. The remainder of this opinion concerns the Plaintiff's RLUIPA claims.

Facts of the Case

The witnesses called by the Plaintiff consisted of himself, inmate Stephen Jones, Defendant Sherri L. Milligan, Defendant Karen Norman, Michael Unit Property Officer Linville and Michael Unit Warden Jon Rupert. The witnesses called by the Defendants were Chaplain Charles Kiser, Chaplain Bill Pierce and Warden Jon Rupert. The parties also submitted documentary evidence.

The Court notes that the Plaintiff had the burden to prove his case by the preponderance of the credible testimony and evidence. After considering all of the evidence and testimony, the Court makes the following findings of fact based on the preponderance of the credible testimony and evidence. On May 31, 2005, the Plaintiff changed his religious affiliation with the prison system to Muslim. He was subsequently transferred from the Stiles Unit to the Beto Unit. The property inventory sheet prepared just prior to the transfer did not indicate that he had any religiously oriented property. Similarly, the property inventory sheet prepared upon his arrival at the Beto Unit, on January 2, 2006, did not list any religiously oriented property. TDCJ policy requires inmates to have property papers for all of the property in their possession. The policy was adopted to stop problems associated with extortion and inmates stealing from each other. It is noted, however, that the Plaintiff submitted an Inter-Office Communication issued by the Stiles Unit Chaplain to the property office specifying that the Plaintiff should be allowed to keep one white Kuffi cap and a prayer rug.

In March, 2005, the prison system issued a change in policy regarding prayer beads requiring that all prayer beads be black. Officers are expected to confiscate any prayer beads found in the possession of inmates that are not black. The policy change was the result of problems associated with members of various prison gangs using colors to designate membership in a particular gang. On March 27, 2006, Defendant Norman confiscated the Plaintiff's prayer beads because they were green and because he was improperly using them by wearing them around his neck.

On June 29, 2006, Defendant Norman conducted a search of the Plaintiff's property. A number of items were confiscated, including the Plaintiff's prayer rug and Koran. The prayer rug was confiscated because the Plaintiff did not have property papers for the prayer rug. His Koran was confiscated because it had been altered. More specifically, he had placed clear tape on the spine of the Koran to keep it from falling apart. Inmates are not allowed to posses tape. Security problems have occurred because of the way inmates have used tape. For example, inmates have used tape to keep their cell doors from locking. They have placed tape on the spine of books in order to hide contraband. Warden Rupert testified that a dictionary was recently confiscated which had a cell phone in the spine of the book that had been hidden with tape. He added that prison employees should confiscate any book that has tape on it. It is noted that an Islamic center in Irving donates religious items to the prison system to give to Muslim inmates. Muslin inmates may submit a request to receive such property. Property papers should be issued to inmates upon the receipt of such property. The Plaintiff received a copy of the Koran from another inmate four months after the confiscation of his Koran. It is the Court's understanding that he does not have property papers for the Koran, and it is subject to being confiscated.

Discussion and Analysis

The Supreme Court found that RLUIPA was constitutional in *Cutter v. Wilkinson*, 544 U.S. 709 (2005). In upholding the constitutionality of the statute, the Supreme Court made the following observations:

> RLUIPA is the latest of long-running congressional efforts to accord religious exercise heightened protection from government-imposed burdens, consistent with this Court's precedents. . . . Congress documented, in hearings spanning three years, that "frivolous or arbitrary" barriers impeded institutionalized persons' religious exercise. . . . RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion.

*Id.* at 714, 716, 721.

RLUIPA provides that no "government shall impose a substantial burden on the religious exercise of a person residing in or confined in an institution," unless the government shows that the

burden furthers "a compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). A "government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004). The inquiry is a "case-by-case," fact-specific inquiry. *Id.* at 571. The Fifth Circuit has recognized that security is a compelling governmental interest in the prison setting. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 332 & 334 (5th Cir. 2009), *petition for cert. filed*, No. 08-1438 (May 18, 2009). Furthermore, the phrase "least restrictive means" has its plain meaning." *Id.*

RLUIPA does not create a cause of action for damages against Texas or the defendants acting in either their official or individual capacities. *Id.* at 331. Under RLUIPA, the only viable claims that the Plaintiff has is against TDCJ through its officials for declaratory and injunctive relief. *Garner v. Morales*, No. 07-41015, 2009 WL 577755 at *2 (5th Cir. March 6, 2009). *See also Aguilar v. TDCJ*, 160 F.3d 1052, 1054 (suit against TDCJ "alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief must be declaratory or injunctive in nature and prospective in effect.").

The first issue for the Court's consideration is whether the prison system imposed a substantial burden on the religious exercise of the Plaintiff. Muslims inmates have been permitted to exercise their beliefs in a number of ways. Among other things, they may own a Koran, prayer rug and prayer beads. The Plaintiff's testimony showed that the confiscation of the religious property placed a substantial burden on his ability to practice his religion. He testified that he could not say his prayers without his prayer rug and prayer beads. He could not study his Koran. The confiscation of these items took away the very items he needed to practice his religion. The burdened activity was religious exercise, and the burden was substantial. The Court finds that the confiscations placed a substantial burden on the Plaintiff's ability to practice his religion.

4

The burden thus shifts to the prison system to show that the burden furthered "a compelling governmental interest" and does so by "the least restrictive means." "Texas obviously has compelling governmental interests in the security and reasonably economical operation of its prisons." *Sossamon*, 560 F.3d at 334. Thus the dispositive issue is whether the government actions or regulations in this case were the least restrictive means of furthering the compelling governmental interest of security.

Three religious items were confiscated. The first item was the Plaintiff's prayer beads. The Plaintiff's prayer beads were confiscated because they were green and because he was improperly wearing them around his neck. It is noted that inmate Muslim Coordinator Stephen Jones testified that prayer beads are not a fashion statement and that they are not intended to wear around one's neck. To the extent that the Plaintiff was wearing the beads around his neck, he was not using them properly and wearing them around his neck was not religious exercise protected by RLUIPA. The real issue concerns the color of the beads. Before the Plaintiff converted to Islam, a prison policy was issued permitting only black prayer beads. Other colors were banned because of problems with gang affiliations. Only black beads were available through approved channels after the policy was adopted. If the prison system had banned all prayer beads due to the problems with colors, then there would be a question of whether the policy was the least restrictive means of dealing with the problem. The prison system resolved this potential problem by accommodating inmates to the extent that they still could have prayer beads, but they had to be black. The policy did not violate RLUIPA. The confiscation of the Plaintiff's prayer beads because they were green did not violate his rights under RLUIPA. It is further noted that by the time the Plaintiff converted to Islam, the only prayer beads he could have obtained through approved channels were black. It is unknown how he obtained the beads, such as by improperly obtaining them from another inmate. In any event, the prison system properly confiscated his prayer beads because they were green.

The next item that was confiscated was the prayer rug. Inmates must have property papers in order to keep the property. The policy was adopted to prevent extortion and theft among inmates.

5

Inmates may easily obtain property papers by following regulations. The Plaintiff has not shown that there were less restrictive means of dealing with the problem, and the Court has not come up with one. The Court finds that the policy requiring inmates to obtain and keep property papers was the least restrictive means of handling security problems associated with extortion and theft among inmates. The confiscation of the prayer rug did not violate RLUIPA. Also prison officials testified that he could have attempted to regain the prayer rug by following procedures for getting property papers. Defendant Milligan testified that he could have come to her, shown her the letter from Chaplain Bell and an investigation would have been conducted to see if the prayer rug belonged to him and whether property papers should have been issued to him for the prayer rug. He did not attempt to follow such procedures. Alternatively, he may also submit a request through proper channels to obtain a new prayer rug with property papers, but he has not done so. The procedures devised by the prison system do not violate RLUIPA.

The final item that was confiscated was the Koran. The Koran is clearly central to the practice of the Plaintiff's religion. The item was confiscated because the Plaintiff had placed clear tape on the spine of the book to keep it from falling apart. The defense witnesses appropriately listed security problems that have occurred due to inmates using tape. With respect to books, Warden Rupert noted that a dictionary was recently confiscated because it had tape on the binding and a cell phone was discovered hidden in the binding. The use of tape undoubtedly causes security problems. Nonetheless, the Court cannot find that the actions taken in the present case were the least restrictive means of dealing with such problems. The Plaintiff properly noted that the tape could have been removed. It is again noted that the Koran is central to the practice of the Plaintiff's religion. It is not in the same category as the confiscation of a dictionary. The confiscation of the Koran because of tape on the binding is in the same league as the "frivolous and arbitrary" actions cited by Congress in enacting RLUIPA. Besides removing the tape, prison officials could have provided him with another copy of the Koran if there was a concern with the book falling apart by removing the tape. Prison officials also had the option of disciplining the Plaintiff for using tape, as opposed to

6

confiscating his Koran. The practice of disciplining inmates for placing tape on their Korans, as opposed to confiscating them, should discourage inmates from placing tape on Korans. In any event, the Court finds that the confiscation of the Plaintiff's Koran because it had tape on the spine of the book was not the least restrictive means of dealing with this security matter. The Court further finds that the prison system violated the Plaintiff's rights provided by RLUIPA by confiscating his Koran.

The Court is aware, however, that the Plaintiff received another copy of the Koran four months after his previous copy was confiscated. Consequently, there does not appear to be a need for the Court to order the prison system to provide him with another copy of the Koran. On the other hand, it was noted at trial that another inmate gave him the new copy of the Koran, which is a violation of property rules. It did not appear at trial that prison officials were concerned with whether he had property papers for the new copy of the Koran; nonetheless, the potential exists for prison officials to confiscate his new copy of the Koran. Consequently, the prison system should be ordered to provide the Plaintiff with property papers for the new copy of the Koran. It is again noted that a lawsuit against Property Officer Milligan in her official capacity as an agent of the State is in actuality a lawsuit against the State, including the prison system. It is accordingly

**ORDERED** that the prison system through Property Officer Sherri L. Milligan, or alternatively Michael Unit Property Officer Linville, has thirty days from the issuance of this order to provide the Plaintiff with property papers for his Koran. The Defendants shall submit a notice to the Court once the property papers for the Koran have been issued to the Plaintiff. It is further

**ORDERED** that all other relief is **DENIED** and the complaint is **DISMISSED** with prejudice. All motions not previously ruled on are **DENIED**.

**So ORDERED and SIGNED this 19th day of June, 2009.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE